IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STEPHANIE RIGGS**
**ON BEHALF OF GLENN RIGGS,**

    **Plaintiff,**

  v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 2:15-cv-2964
Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Stephanie Riggs O.B.O. Kevin Glenn Riggs,[1] brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 8).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] The claimant, Kevin Glenn Riggs, died on a date unknown, and in order to pursue this claim, his surviving spouse, Stephanie Riggs, became the claimant in this action on August 1, 2014.  (R. at 86.)

## I. BACKGROUND

Plaintiff filed his applications for benefits on June 15, 2010, alleging that he has been disabled since November 17, 2008, due to back problems, left leg problems, reflux, and swelling testicles. (R. at 245-48, 249-59, 277.) Plaintiff's applications were denied initially and upon reconsideration. A hearing was held before Administrative Law Judge George Gaffaney ("ALJ Gaffaney"), who found in a decision dated April 19, 2012, that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 94-105.)

On review, the Appeals Council found that ALJ Gaffaney's April 19, 2012 decision was not supported by substantial evidence because it relied upon the testimony of a vocational expert who had not been asked whether the testimony offered was consistent with the *Dictionary of Occupational Titles*. On June 25, 2013, the Appeals Council remanded this case for further development of the record, with orders to obtain supplemental evidence from a vocational expert to clarify the effect of any assessed limitations upon Plaintiff's occupational base. (R. at 111-12.)

Upon remand, a hearing was held on December 4, 2013, before Administrative Law Judge Ena Weathers ("ALJ Weathers"). Plaintiff, represented by counsel, appeared and testified. (R. at 42-54.)

Vocational expert Robert Breslin ("VE"), also appeared and testified at the hearing. (R. at 54–58.) The VE testified that Plaintiff's past jobs included a welder/fabricator, retail salesperson, and a fast food worker. (R. at 55.) ALJ Weathers asked a number of questions regarding a hypothetical individual with Plaintiff's age, education, and work experience. (R. at 56-58.) Based upon such a hypothetical individual with the residual functional capacity ("RFC")

ALJ Weathers ultimately assessed for Plaintiff, the VE testified that the hypothetical individual would be unable to perform Plaintiff's past work, but could perform "some sedentary, unskilled jobs." (R. at 57.)  The VE identified the following jobs:  order clerk, with 100 regional positions and 200,000 national jobs; unskilled assembly worker, with 85 regional jobs and 158,000 national jobs; and inspector, with 50 regional positions and 36,000 national jobs.  (*Id.*)  The VE further testified that if this individual were off task 25% of the work day in addition to regularly scheduled breaks, he would not be able to sustain employment.  (R. at 57-58.)  The VE testified that his testimony was consistent with the *Dictionary of Occupational Titles*.  (R. at 55, 57, 58.)

On January 16, 2014, ALJ Weathers issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 19-32.)  ALJ Weathers concluded that Plaintiff met the insured status requirements through December 31, 2013.  At step one of the sequential evaluation process,[2] ALJ Weathers found that Plaintiff had not engaged in substantially gainful activity since November 17, 2008.  (R. at 22.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ Weathers concluded that Plaintiff had the severe impairments of morbid obesity, degenerative disc disease of the lumbar spine with radiculopathy, osteoarthritis of the knees, depressive disorder, and anxiety disorder.  (*Id.*)  She also acknowledged that Plaintiff had been diagnosed with gastroesophageal reflux disease, diverticulitis, benign hypertension and hyperlipidemia, diabetes mellitus type II, obstructive sleep apnea, a sleep disorder, and a history of and bronchitis, but concluded that these impairments were not severe impairments because the record did not show that these diagnoses caused "definite and measurable work limitations."  (R. at 23.)  She also noted that the urinary incontinence that Plaintiff endorsed during his testimony was documented in the treatment records, but concluded that it could "be a symptom of other conditions" and indicated that it was "accounted for in the consideration . . . of his overall residual functional capacity level."  (*Id.*)  ALJ Weathers further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 24.)  At step four of the sequential process, the ALJ Weathers set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is unable to kneel, crawl, or climb ladders, ropes, or scaffolds. [Plaintiff] can only occasionally stoop, crouch, and climb ramps or stairs, and he can engage in only occasional pushing and pulling with the lower extremities.  He must be given the ability at his workstation to change from a standing to a seated position, or vice versa, for 1 to 2 minutes at a time every hour to two hours without interfering with his work product, and requires the use of a cane to ambulate on uneven surfaces. [Plaintiff] must avoid even occasional exposure to extremes of cold, humidity, and wetness, and he must avoid all exposure to respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation.  He is unable to work around hazards such as heights and moving machinery parts and must avoid concentrated exposure to vibration. [Plaintiff] is limited to performing simple, repetitive tasks without strict production demands.

(R. at 25.) Within her decision, ALJ Weathers acknowledged that Plaintiff had injured himself falling due to his impairments on several occasions and cited record evidence reflecting that he fractured his right leg in March 2012, requiring surgical nailing of his right tibia; that he injured his left elbow and right wrist in a June 2012 fall; that he re-injured his elbow in an August 2012 fall; that he fractured his left ankle in January 2013; that he injured his right leg in April 2013; and that he injured his right ankle in May 2013. (R. at 27-29.)

Relying on the VE's testimony, ALJ Weathers concluded that even though Plaintiff could not perform his past relevant work, he could perform jobs that exist in significant numbers in the national economy. (R. at 30-32.) She therefore concluded that Plaintiff was not disabled under the Social Security Act, stating follows:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

On September 8, 2015, the Appeals Council denied Plaintiff's request for review and adopted ALJ Weather's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff assert two contentions of error. (ECF No. 12.) In his first contention of error Plaintiff asserts that ALJ Weathers erroneously relied upon the VE's testimony because the testimony was unreliable and failed to cite a significant number of jobs. In his second contention of error, Plaintiff asserts that ALJ Weathers erroneously discounted his allegations of disabling pain. In her Memorandum in Opposition, the Commissioner maintains that Plaintiff 's first contention of error lacks merit because the VE identified a significant

5

number of both regional and national jobs. The Commissioner further argues that the VE was not required to show that the jobs exist in a particular local economy and that no rule or regulation requires the VE to identify boundaries of a specific regional area.

## II.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

The Undersigned finds that remand is required to determine whether significant jobs remain.[3] The applicable regulation provides in pertinent part as follows:

> (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether—
>
>   (1) Work exists in the immediate area in which you live;
>
>   (2) A specific job vacancy exists for you; or
>
>   (3) You would be hired if you applied for work.
>
> (b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy. We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 416.966.

In *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), the United States Court of Appeals for the Sixth Circuit addressed the issue of what constitutes a "significant number" as contemplated

---

[3]This finding obviates the need for in-depth analysis of Plaintiff's alternative contention of error. Thus, the Undersigned need not, and does not, resolve the alternative basis Plaintiff asserts support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

under this regulation. The *Hall* Court made clear that what constitutes a "significant number" requires an ALJ to consider a variety of factors within the context of each case:

> We are not blind, however, to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. The figure that the ALJ here found is not that magic number; the 1350 figure is to be viewed in the context of this case only. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

839 F.3d at 275. These factors are, however, "suggestions only–the ALJ need not explicitly consider each factor." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir.1999) (citing *Hall*, 837 F.2d at 275). The *Hall* Court ultimately found that "between 1350 and 1800 jobs in a nine-county area including Dayton Ohio where the [claimant] lived" constituted significant number of jobs. *Hall*, 837 F.2d at 273.

The Commissioner lists numerous cases in which courts have found that 200 jobs in the regional economy constitutes a significant number of jobs. (*See* Mem. in Opp. 7, ECF No. 15.) As this Court recently pointed out, "[i]t is tempting to do . . . a survey of decisions to see where courts typically draw the line between significant and insignificant numbers of jobs." *Detty v. Colvin*, No. 2:15-cv-0637, 2016 WL 304612, at * 4 (S.D. Ohio Jan. 26, 2016). Notably, such an inquiry also reveals several cases in which trial courts within the Sixth Circuit rejected an ALJ's finding that numbers of regional jobs exceeding the 235 positions at issue here were significant. *See, e.g.*, *Frommel v. Comm'r of Soc. Sec.*, No. 14–CV–522, 2015 WL 3970147, at *4 (S.D. Ohio June 10, 2015) (remanding for a determination of whether 730 jobs in local Cincinnati area

8

constituted a significant number); *Smathers v. Comm'r of Soc. Sec.*, No. 2:14-cv-500, 2015 WL 401017, at *3-6 (S.D. Ohio Jan. 28, 2015), adopted and affirmed 2015 WL 5568324 (S.D. Ohio Sept. 22, 2015) (remanding for a determination of whether 300 jobs in Ohio constitutes a significant number); *Cain v. Comm'r of Soc. Sec.*, No. 1:14-cv-463, 2015 WL 4393987, at *8-9 (W.D. Mich. July 16, 2015) (reversing and remanding for an award of benefits based upon conclusion that 450 jobs in the State of Michigan was not a significant number); *Mackins v. Astrue*, 655 F.Supp.2d 770, 773 (W.D. Ky. 2009) (remanded on a number of grounds, including for a determination of whether 900 jobs in Kentucky constitutes a "significant number"); *West v. Chater*, No. C-1-95-739, 1997 WL 764507, at *2 (S.D. Ohio Aug. 21, 1997) (finding "as a matter of law that 100 jobs locally, 1,200 jobs statewide and 45,000 jobs nationally do not constitute a significant number of jobs under 42 U.S.C. § 423(d)(2)(a)"); *Waters v. Sec'y of H.H.S.*, 827 F.Supp. 446, 449-50 (W.D. Mich. 1992) (reversing and remanding for an award of benefits based upon conclusion that 1000 jobs in the State of Michigan was not a significant number). Regardless, attempting to draw a line based upon a survey of other cases ignores the Sixth Circuit's holding in *Hall v. Bowen* that there is no such "magic number" and that "judge[s] should consider many criteria in determining whether work exists in significant numbers." 839 F.3d at 275; *see also Detty*, 2016 WL 304612, at * 4 (explaining that "[t]he necessary inquiry is somewhat more nuanced" and applying the *Hall* factors to the facts of the case).

Applying the *Hall* factors to the facts of this case persuades the Undersigned that remanding for a determination of whether significant jobs remain is appropriate. Here, the VE identified a three jobs that, when aggregated, provide only 235 regional jobs. (R. at 57.) The VE failed to indicate whether these positions were representative or the only positions Plaintiff

9

could perform. The VE also failed to define or otherwise identify the region he utilized. *Cf. Pollice v. Sec'y of Health & Hum. Servs.,* No. 87-1609, 1988 WL 28536, at *1 (6th Cir. 1988) ("[T]he term 'region' is flexible . . . and gives the Secretary sufficient latitude to treat an entire state as the region to be considered."). As Plaintiff points out, the VE and ALJ are located in Cincinnati, Ohio, just across the river from Kentucky. But Plaintiff lived in Southeastern Ohio, which is approximately a 2.5-hour drive to Cincinnati, Ohio; a 2-hour drive to Columbus, Ohio; and a 4-hour drive to Cleveland Ohio. In comparison, Plaintiff's home is under an hour's drive to Huntington, West Virginia; and approximately an hour drive to Charleston, West Virginia. Thus, the more appropriate region, if defined by state, appears to be West Virginia. What region the ALJ employed may be significant in light of the very low numbers of regional jobs identified and also the other *Hall* factors. For example, Plaintiff's level of disability is high; ALJ Weathers limited Plaintiff to sedentary work, which is the most restrictive exertional level. She further imposed a number of other mental and physical limitations that significantly eroded the number of sedentary positions available. Indeed, according to Plaintiff, the three jobs identified represent only .02 percent of the total unskilled sedentary jobs and .00095 percent of all unskilled jobs available in the national economy. (*See* Reply 1-2, ECF No. 18.) Most notably, ALJ Weathers indicated that Plaintiff "must be given the ability at his workstation to change from a standing to a seated position, or vice versa, for 1 to 2 minutes at a time every hour to two hours" and that "he can engage in only occasional pushing and pulling with the lower extremities." (R. at 25.) These particular limitations clearly impact the distance Plaintiff is capable of traveling to engage in the assigned work, which is another *Hall* factor this Court must consider.

In sum, considering the ambiguity concerning what region the VE considered, the level of Plaintiff's disability, the limitations on the distance Plaintiff is capable of traveling, and the limited types and availability of jobs Plaintiff can perform, the Undersigned cannot conclude that ALJ Weather's step-five finding is supported by substantial evidence.  It is therefore **RECOMMENDED** that the Court find Plaintiff's first contention of error to be well taken and **REMAND** this case to the Commissioner for further consideration of whether Plaintiff could have performed work that exists in significant numbers in the national economy.

### IV.    DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### V.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 6, 2017                       /s/ *Elizabeth A. Preston Deavers*
                                                     ELIZABETH A. PRESTON DEAVERS
                                                     UNITED STATES MAGISTRATE JUDGE