IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE RIGGS<br>ON BEHALF OF GLENN RIGGS, | : <br> : <br> : |
| Plaintiff, | :     Case No. 2:15-cv-2964 <br> : |
| v. | :     JUDGE ALGENON L. MARBLEY <br> : |
| COMMISSIONER OF<br>SOCIAL SECURITY, | :     Magistrate Judge Deavers <br> : <br> : |
| Defendant. | : |

## OPINION & ORDER

This matter comes before the Court for consideration of the Commissioner's Objection to the Magistrate Judge's February 6, 2017 **Report and Recommendation** (Doc. 19), recommending that this Court sustain Stephanie Riggs's Statement of Specific Errors (Doc. 12) and remand this case to the Commissioner for further proceedings under 42 U.S.C. § 405(g). Upon independent review by the Court, and for the reasons set forth below, the Commissioner's Objection is hereby **SUSTAINED**.  The Court, therefore, **REJECTS** the Magistrate Judge's **Report and Recommendation** and **AFFIRMS** the Commissioner's denial of benefits.

### I.  BACKGROUND

Glenn Riggs (now deceased) applied for supplemental security income ("SSI") on June 15, 2010.  He alleged that he became disabled on November 17, 2008, due to back problems, leg problems, reflux, and swelling of his testicles.  After initial administrative denials of his application, an Administrative Law Judge ("ALJ") conducted a video hearing on February 14, 2012, and, on April 19, 2012, issued a decision denying Riggs's application after finding that he was not "disabled" within the meaning of the Social Security Act.

1

On review, the Appeals Council found that the ALJ's April 19, 2012 decision was not supported by substantial evidence because it relied on the testimony of a vocational expert who had not been asked whether his testimony was consistent with the *Dictionary of Occupational Titles*.  The Appeals Council remanded the case for further development of the record, with orders to obtain supplemental evidence from a vocational expert to clarify the effect of any assessed limitations on Riggs's occupational base.

On remand, a different ALJ, Judge Weathers, conducted a hearing, at which Riggs and a vocational expert ("VE"), Robert Breslin, both testified.  The VE's testimony regarding the availability of suitable jobs both in the national and regional economies forms the crux of this dispute, so the Court devotes some attention to it.

The VE testified that Riggs's past jobs included service as a welder/fabricator, as a retail salesperson, and as a fast-food worker.  (Admin. R., Doc. 8-2, PageID 99).  ALJ Weathers then asked a series of questions regarding a hypothetical person with Riggs's age, education, and work experience.  Based on a hypothetical person with the residual functional capacity that ALJ Weathers ultimately assigned to Riggs, the VE testified that the hypothetical person would be unable to perform any of Riggs's past work, but could perform "some sedentary, unskilled jobs." (*Id.* at PageID 101).  Those jobs included the following: (1) "order clerk, [with] 100 regional positions and 200,000 in the U.S."; (2) "unskilled assembly positions, [with] 85 regional jobs and 158,000 in the U.S. economy"; and (3) inspection jobs positions, [with] 50 regional positions, and 36,000 [in the] U.S. [economy]." (*Id.*).  The VE also testified that his opinion was consistent with the *Dictionary of Occupational Titles*.  (*Id.* at PageID 101).  Riggs's attorney did not ask any follow-up questions regarding the VE's testimony.  (*Id.* at PageID 102).

On January 16, 2014, ALJ Weathers issued a decision denying benefits after conducting the required five-step analysis for disability benefits claims. *See* 20 C.F.R. § 416.920(a).[1]

At step one, the ALJ determined that Riggs had not engaged in substantial gainful activity since his application date of November 17, 2008.

At step two, the ALJ found that Riggs had the severe impairments of morbid obesity, degenerative disc disease of the lumbar spine with radiculopathy, osteoarthritis of the knees, depressive disorder, and anxiety disorder. The ALJ also found that Riggs suffered from a variety of non-severe impairments, including gastroesophageal reflux disease, diverticulitis, benign hypertension and hyperlipidemia, diabetes mellitus type II, obstructive sleep apnea, a sleep disorder, a history of bronchitis, and urinary incontinence.

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

3

At step three, the ALJ determined that Riggs's impairments, whether viewed singly or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Supbart P, Appendix 1.

Prior to reaching step four,[2] the ALJ found that Riggs had the following residual functional capacity ("RFC"):

> [Riggs] has the residual functional capacity to perform sedentary work . . . except that he is unable to kneel, crawl, or climb ladders, ropes, or scaffolds. [He] can only occasionally stoop, crouch, and climb ramps or stairs, and he can engage in only occasional pushing and pulling with the lower extremities. He must be given the ability at his workstation to change from a standing to a seated position, or vice versa, for 1 to 2 minutes at a time every hour to two hours without interfering with his work product, and requires the use of a cane to ambulate on uneven surfaces. [He] must avoid even occasional exposure to extremes of cold, humidity, and wetness, and he must avoid all exposure to respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation. He is unable to work around hazards such as heights and moving machinery parts and must avoid concentrated exposure to vibration. [He] is limited to performing simple, repetitive tasks without strict production demands.

(Admin. R., Doc. 8-2, at PageID 69).

At step four, and based primarily on the VE's testimony, the ALJ concluded that Riggs was unable to perform any of his past relevant work.

Finally, at step five, the ALJ determined that, based on Riggs's age, education, work experience, and RFC, he could perform several jobs that exist in significant numbers in the national economy, including working as an order clerk, an assembler, and an inspector. Consequently, the ALJ concluded that Riggs was not entitled to disability benefits. The ALJ based her step-five finding solely on the VE's testimony regarding a hypothetical person with Riggs's age, education, work experience, and RFC, stating as follows:

---

[2] "Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and at step five when we evaluate your claim at these steps." 20 C.F.R. § 416.920(a)(4); *see Morgan v. Colvin*, 803 F.3d 773, 776 n.2 (5th Cir. 2015).

>    Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(*Id.* at PageID 76).

The claimant, Glenn Riggs, died on July 2, 2014, (Death Cert., Doc. 3-1, PageID 23), so his wife, Stephanie, substituted herself as the real party in interest in an effort to pursue retroactive benefits payable to her husband. *See* 20 C.F.R. §§ 404.503(b)(1) and 416.542(b); (*see also* Admin. R., Doc. 8-2, PageID 130).

The Appeals Council denied Stephanie Riggs's request for review of the ALJ's determination on September 8, 2015, thus rendering the ALJ's benefits-denial decision the Commissioner's final agency action. (Admin. R., Doc. 8-2, PageID 45).

Riggs then filed suit in federal court, alleging two specific errors. *First*, she alleged that the ALJ erred in her step-five analysis by relying on the VE's testimony to find that Riggs's husband was not disabled because he could perform work that existed in significant numbers in the national economy. More specifically, Riggs argued that the VE's testimony was unreliable because (1) he did not identify the geographic region from which he cited the availability of jobs; and (2) the number of jobs the VE cited, and upon which the ALJ relied, was not "significant" as required to deny benefits. *Second*, Riggs alleged that the ALJ failed to follow the requirements of SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in finding that her husband's pain allegations were not credible. Riggs argued that the ALJ seemed to require substantial, objective medical evidence of pain and that the ALJ cherry-picked findings from the record to support her non-credibility determination. (Statement of Errors, Doc. 12, PageID 1237-1251).

On February 6, 2017, the Magistrate Judge issued a Report and Recommendation, recommending that this Court sustain Riggs's Statement of Errors. (Doc. 19). The Magistrate based her recommendation solely on Riggs's first ground for relief—the unreliability of the VE's testimony concerning both the applicable region and the number of jobs available to Riggs's late husband. (*Id.* at PageID 1284 & n.3). The Magistrate agreed that the ALJ's step-five finding was not supported by substantial evidence due to "the ambiguity concerning what region the VE considered" and the "availability of jobs [Riggs] [could] perform." (*Id.* at PageID 1288). Accordingly, the Magistrate Judge recommended a limited remand to the Commissioner "for further consideration of whether [Riggs] could have performed work that exists in significant numbers in the national economy." (*Id.*). The Commissioner then objected to the Magistrate Judge's Report and Recommendation. (Doc. 20).

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence constitutes "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citation omitted).

### III.  ANALYSIS

In her first ground for relief, Riggs argued that the ALJ committed reversible error in her step-five analysis regarding the availability of significant jobs in the national economy. Magistrate Judge Deavers sustained Riggs's contention, agreeing that the ALJ's step-five finding was not supported by substantial evidence and that further fact finding was required before denying benefits.  The Commissioner objects to the Magistrate Judge's conclusion, arguing that the ALJ had a reasonable basis for relying on the VE's testimony, because: (1) a VE need not show that jobs existed in a particular local economy or identify the boundaries of a specific regional area; and (2) the number of available jobs identified in the national economy was "significant."  Accordingly, the Commissioner argues that court interference with the ALJ's decision would run counter to the substantial evidence standard.  This Court agrees.

#### A.  The Requirements for Satisfying Step Five of the Sequential Analysis

At the fifth step of the Social Security Administration's sequential disability analysis, the Commissioner must consider the claimant's RFC, age, education, and work experience to see if the claimant "can make an adjustment to other work."  20 C.F.R. § 416.920(a)(4)(v).  If a claimant can make an adjustment to other work, the Commissioner "will find that [the claimant] is not disabled."  *Id.*  If, however, the claimant "cannot make an adjustment to other work," the Commissioner will find that the claimant *is* disabled.  *Id.*

The "other work" to which a claimant must be able to adjust "must exist in significant numbers in the national economy"—i.e., "in the region where [the claimant] lives or in several regions in the country."  *Id.* § 416.960(c)(1).  The burden for establishing that "other work" exists in significant numbers in the national economy rests with the Commissioner, not the claimant. *Id.* § 416.960(c)(2).

7

The applicable regulation for determining whether work "exists in the national economy" provides as follows:

> (a) General.  We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.  It does not matter whether--
>
>> (1) Work exists in the immediate area in which you live;
>>
>> (2) A specific job vacancy exists for you; or
>>
>> (3) You would be hired if you applied for work.
>
> (b) How we determine the existence of work.  Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.  Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy.  We will not deny you disability benefits on the basis of the existence of these kinds of jobs.  If work that you can do does not exist in the national economy, we will determine that you are disabled.  However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

*Id.* § 416.966.

### B.  The ALJ Was Permitted to Rely on the Number of Jobs Available Nationally

The Magistrate Judge based her recommendation largely on the low number of "regional" jobs the VE identified—i.e., 100 jobs as an order clerk, 85 jobs as an assembler, and 50 jobs as an inspector—as well as the VE's failure to identify the precise region about which he was testifying.  As the Social Security Act and its accompanying regulations make clear, however, the "significant number" of jobs inquiry is not limited to the region in which a claimant resides.  Rather, the focus is national in character.  *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("First, the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy—not just a local area.").

The Social Security Act provides that "work which exists in the national economy means work which exists in significant numbers *either* in the region where [the claimant] lives *or* in several regions of the country." 42 U.S.C. § 423(d)(2)(A) (emphasis added). As such, "[t]he Commissioner is not required to show that job opportunities exist within the local area." *Harmon*, 168 F.3d at 292; *see also, e.g.*, *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (explaining that disability insurance "is not available to fund [a claimant's] decision to live far from his job"); *Geiger v. Apfel*, 229 F.3d 1151, 2000 WL 1257184, at *2 (6th Cir. 2000) (Cole, J.) (unpublished table decision) ("[T]he Commissioner need not show that a significant number of jobs exists in the local economy, only that the claimant is capable of performing other jobs existing in the national economy.").

Thus, while the VE may have identified a low number of jobs available "regionally," the ALJ was permitted to look beyond those numbers and rely instead on the larger number of jobs available nationally—in this case, 200,000 jobs as an order clerk; 158,000 jobs as an assembler; and 36,000 jobs as an inspector. *See Harmon*, 168 F.3d at 292. While there is no "magic number" that constitutes a "significant number" of jobs, the Court finds substantial evidence supports the ALJ's determination that 394,000 jobs available nationally passes muster when considering the level of Riggs's impairments, the reliability of the VE's testimony, the reliability of Riggs's testimony, the nature of the jobs, the types and availability of such work, and so on. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988); *see also Bradley v. Comm'r of Soc. Sec.*, 40 F. App'x 972, 973 (6th Cir. 2002) (finding 170,000 unskilled, sedentary jobs in the national economy was a significant number); *Nash v. Sec'y of Health & Human Servs.*, 59 F.3d 171, 1995 WL 363381, at *3 (6th Cir. 1995) (unpublished table decision) (holding that 70,000 sedentary jobs in the national economy was a significant number).

To be sure, the regulations state that jobs "existing in the national economy" do not include "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s]." 20 C.F.R. § 404.1566(b). Riggs, therefore, would have a better argument had the VE testified that a limited number of suitable jobs existed nationally in isolated locations—as, for example, an avocado farmer, volcanologist, or oil-rig worker. But that is not what happened below, and that is not what Riggs argued in this appeal. Instead, the VE testified that hundreds of thousands of jobs existed nationally in generic positions like "order clerk," "assembler," and "inspector." (Admin. R., Doc. 8-2, PageID 101). And Riggs did not argue that these jobs fit the exception for being "isolated" in number or geography. *Stump v. Sec'y of Health & Human Servs.*, 25 F.3d 1050, 1994 WL 194714, at *4 (6th Cir. 1994) (unpublished table decision) (citing 20 C.F.R. § 404.1566(b)). Instead, she argued that the number of *regional* jobs the VE identified—285—was not "significant." (Statement of Errors, Doc. 12, PageID 1248).

The Court finds nothing "isolated" about the jobs the VE identified or the locations in which they exist within the national economy. *See Stump*, 1994 WL 194714, at *4. Accordingly, the ALJ was entitled to rely on the VE's testimony in concluding that suitable work existed in "significant numbers" within the national economy, and the Court finds substantial evidence for that conclusion. *See Taskila*, 819 F.3d at 904-05.[3]

---

[3] Because the Court finds that the ALJ was entitled to rely on the VE's testimony regarding the number of suitable jobs available *nationally*, the Court need not reach the Magistrate's alternate conclusion that the VE failed to identify the specific boundaries of the *region* about which he was testifying. Nevertheless, unpublished authority from the Sixth Circuit suggests that VEs need not identify the specific geographical area about which they are testifying. *See Nation v. Apfel*, 194 F.3d 1313, 1999 WL 970302, at *8 (6th Cir. 1999) (unpublished table decision) ("[I]t is clear that Plaintiff's claim that the VE improperly failed to specify the geographical area of the state or direct Plaintiff to any specific job is without merit. It is sufficient that the VE identified a significant number of jobs which exist in the national economy that Plaintiff could perform.").

10

### C. The Administrative Law Judge Properly Weighed the Medical Opinions of Record in Crafting Riggs's Residual Functional Capacity.

Although the Magistrate Judge did not analyze Riggs's second ground for relief, the Court will rule on it here for the sake of judicial efficiency. The Court notes that this argument was briefed fully by both parties. (Statement of Errors, Doc. 12, PageID 1249-51; Resp. in Opp'n, Doc. 15, PageID 1266-71).

In her second ground for relief, Riggs argues that substantial evidence does not support the ALJ's finding with respect to her late husband's RFC. Riggs contends that the ALJ failed to follow the requirements of SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in concluding that her husband's pain allegations were not credible. In short, Riggs argues that the ALJ placed too much weight on objective medical evidence and not enough on weight on subjective indications of pain. (Statement of Errors, Doc. 12, PageID 1250).

The Court disagrees with Riggs's assertion. As an initial matter, the Court notes that the ALJ alone is responsible for determining a claimant's RFC. Neither physicians nor claimants are responsible for that determination. *Coldiron v. Comm'r*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC." (citing 42 U.S.C. § 423(d)(5)(B))); *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004) ("Under [the applicable] regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity." (quotation omitted)). Moreover, as the Sixth Circuit has explained, "determinations of credibility related to subjective complaints of pain rest with the ALJ, and should not be discarded lightly." *Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) (quotation omitted).

Where, as here, a claimant's symptoms and not the underlying condition form the basis of a disability claim, "a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Comm'r*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929).

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Id.* For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record. *Id.*

The ALJ properly followed this framework. (Admin R., Doc. 8-2, PageID 70). After a lengthy discussion of the relevant medical evidence, the ALJ found that some medically determinable physical impairments could reasonably be expected to produce some of the claimant's symptoms. (*Id.* at PageID 70-74). For example, The ALJ explained that she gave "some weight" to the assessments of the state agency reviewing physicians, who opined that Riggs: (1) could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; could stand and walk at least two hours in an eight-hour workday; and could sit about six hours in an eight-hour workday due to lumbar degernative disc disease, obesity, and a history of knee pain; but (2) could not climb ladders, ropes, or scaffolds, and could only occasionally engage in other postural activities like balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs. (*Id.* at PageID 73).

Indeed, taking all of Riggs's medical records into account, the ALJ also added limitations that were more restrictive than those recommended by any doctor of record. For example, the ALJ found that Riggs could only occasionally push and pull with the lower extremities due to

pain in his lower back and legs. (*Id.* at PageID 73). Because the record showed that Riggs experienced discomfort when staying in the same position for prolonged periods of time, the ALJ also found that he must "be given the ability at his workstation to change from a standing to a seated position, or vice versa, for 1 to 2 minutes at a time every hour to two hours without interfering with his work product." (*Id.*). The ALJ added that Riggs must be able to use a cane to ambulate on uneven surfaces. (*Id.*). Due, moreover, to "environmental aggravation of his lower back pain and discomfort associated with his obesity," the ALJ determined that Riggs "must avoid even occasional exposure to extremes of cold, humidity, and wetness." (*Id.*). And because of his breathing problems, the ALJ found that Riggs "should avoid all exposure to respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation." (*Id.*). Finally, due to Riggs's risk of falling, he "should avoid working around hazards such as heights and moving machinery parts and must avoid concentrated exposure to vibration." (*Id.*).

That said, the ALJ also determined that: (1) "the medical evidence of record does not support the presence of limitations of the severity level indicated by the claimant in his testimony"; (2) "[Riggs] was only a partially credible witness"; and (3) "[Riggs] did not provide a fully credible basis for finding him to have greater limitations" than set forth in his RFC. (*Id.* at PageID 70). Critically, the ALJ provided specific reasons for her credibility finding, including inconsistencies between Riggs's testimony at the hearing and what Riggs told his consulting physician, as well as internal inconsistencies with Riggs's testimony at the hearing. (*Id.*) (identifying inconsistencies in Riggs's testimony). The ALJ's credibility determination finds substantial support in the record, and thus, should not be overturned by this Court. *See Rogers*, 486 F.3d at 247-48 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

As the Sixth Circuit has explained, "[c]onsistency of the various pieces of information contained in the record should be scrutinized," as they were below. *Id.* at 247. And, as the ALJ's ruling recognizes, "[c]onsistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

After careful consideration of the evidence, the ALJ found that Riggs's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but also found that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Accordingly, the ALJ properly determined Riggs's RFC based on the record as a whole. *See Webb*, 368 F.3d at 633 ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity."); *Lucido*, 121 F. App'x at 622 ("[W]hile Lucido presented some evidence supporting his subjective complaints, this court has recognized that determinations of credibility related to subjective complaints of pain rest with the ALJ, and should not be discarded lightly. More than a scintilla of evidence supports the ALJ's credibility findings. Therefore, we cannot disturb them on this review." (quotation omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Court **SUSTAINS** the Commissioner's Objection (Doc. 20) and **REJECTS** the Magistrate Judge's **Report and Recommendation** (Doc. 19). The Commissioner's denial of benefits is **AFFIRMED**. This case is **DISMISSED.**

**IT IS SO ORDERED.**

                                               /s/ Algenon L. Marbley  
                                               **ALGENON L. MARBLEY**  
                                               **UNITED STATES DISTRICT JUDGE**

**DATED: March 2, 2017**